**VIA ECF**                                                                May 17, 2026

Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, New York 10007

**Re: *Noel v. Neighborhood Defender Service, Inc., et al.*, Civil Action No. 1:25-cv-06995 (MKV)**

Dear Judge Vyskocil:

Plaintiff Patrice Noel respectfully submits this response to Defendant Association of Legal Advocates and Attorneys, Local 2325 UAW's ("ALAA" or "Union") pre-motion conference letter regarding its contemplated motion to dismiss.

## I. PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS ARE NOT PREEMPTED

ALAA's reliance on *Beachum v. AWISCO N.Y.* and *Whitehurst v. 1199SEIU* is misplaced. Federal labor preemption does not apply if a state-law claim can be resolved without interpreting a collective bargaining agreement (*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10 (1988)). The Second Circuit explicitly holds that the federal duty of fair representation ("DFR") does not strip state and local courts of independent power to police disability discrimination committed by a labor union (*Figueroa v. Foster*, 864 F.3d 222, 232–33 (2d Cir. 2017)).

Unlike *Whitehurst*, which turned on strict contractual grievance timelines, and *Beachum*—which addressed routine tactical strategies—Plaintiff's claims rest on a total factual abdication of statutory duties and active misrepresentation. Resolving whether ALAA acted with discriminatory animus by conducting zero independent investigation and flatly refusing to review clear medical disclosures requires a purely factual inquiry into the union's naked conduct and subjective state of mind (*Compl. ¶ 101*). Because no provision of the CBA governs or permits a labor organization to completely ignore explicit disclosures of an ongoing psychiatric crisis, or to fabricate a false contractual barrier to deny representation altogether (*Compl. ¶ 103-104*), these civil rights claims are wholly independent of the agreement and escape Section 301 preemption. [1]

---

[1] Plaintiff adequately pleads union liability for failure to accommodate based on the Union's interference with accommodation requests, refusal to advocate during disciplinary proceedings, and aiding and abetting the employer's discriminatory non-accommodation (*Compl. ¶¶ 98-101*); constructive discharge is plausibly alleged where the employer's conduct forced Plaintiff into psychiatric crisis before the formal termination, satisfying *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004); and NYSHRL § 296(6) and NYCHRL § 8-107(13) explicitly impose affirmative duties on covered entities including unions to prevent and remedy discrimination (*Compl. ¶¶ 190-191*).

## II. THE UNION'S RETROACTIVE REWRITING OF HISTORY CANNOT SHIELD ITS ARBITRARY CONDUCT

ALAA's defense that its actions fall within a "wide range of reasonableness" under *Air Line Pilots Ass'n v. O'Neill* is fundamentally incorrect. The Second Circuit has made clear that a union cannot avoid accountability by simply pointing to mechanical procedural milestones; it must demonstrate an actual exercise of "reasoned judgment" on the member's behalf (*Williams v. Air Line Pilots Ass'n, Int'l*, 365 F.3d 69, 76 (2d Cir. 2004)). Complete indifference to a known disabled veteran experiencing an active, documented psychiatric crisis cannot—as a matter of law—constitute reasoned judgment or sit within any permissible range of reasonableness (*Snell v. Suffolk County*, 782 F.2d 1094 (2d Cir. 1986)).

The factual record entirely explodes the ALAA's current, litigation-driven claim that its "grievance escalation" represents its own advocacy. ALAA is only now, for the first time in its motion papers, attempting to claim ownership over the grievances, information requests, and supervisor correspondence (*Compl. Exhs. C, J, K*; *ALAA Letter at 2*). In reality, these motions were taken by the 1 delegate who has been sidelined. Complaint explicitly alleges that these procedural mechanisms were hollow administrative shells, forced upon the central union solely by Plaintiff's persistent *pro se* internal activism and forced chapter votes. ALAA performed none of the underlying substantive investigation it currently claims credit for; it completely refused to interview critical site witnesses or question the discriminatory nature of the employer's supervision. Because the central union hierarchy systematically ignored, sidelined, and cut off communication with the local Harlem chapter delegate throughout the operational timeline, its representation was purely perfunctory, constituting a direct breach under *Patterson v. Newspapers Guild, Local 11*, 547 F.2d 770, 776 (2d Cir. 1976).

## III. ALAA'S INTENTIONALLY MISLEADING REPRESENTATIONS DEMONSTRATE CONTEMPORANEOUS BAD FAITH

ALAA acts in bad faith when its conduct encompasses "fraud, dishonesty, and other intentionally misleading conduct" driven by an improper intent or motive (*Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). ALAA's assertion that it acted in good faith because it "consulted outside counsel when Union representatives ran out of ideas" (*ALAA Letter at 2*; *Compl. Exhs. E, G*) is a verifiable distortion. The "outside counsel" referenced is the exact same union attorney who had been copied on the operational correspondence the entire time. ALAA cannot cite its own pre-existing counsel as an objective outside consultant to invent a retroactive record of diligent effort.

Furthermore, utilizing a fabricated or misleading legal pretext to deny representation to an employee in a protected class constitutes a textbook showing of bad faith (*Ryan v. New York State Thruway Authority*, 889 F. Supp. 2d 390 (N.D.N.Y. 2012)).[2] Plaintiff—a law graduate—

---

[2] *See Ryan v. New York State Thruway Authority*, 889 F. Supp. 2d 390, 409–10 (N.D.N.Y. 2012) (holding that when a defendant utilizes a deliberately false, shifting, or misleading legal rationale to avoid its statutory obligations to a disabled individual, such pretext is legally sufficient to establish bad-faith and discriminatory motive).

presented the union representative with a robust, clear body of civil rights jurisprudence establishing multiple applicable civil rights arguments. ALAA's counsel failed to provide a single line of counter-analysis explaining why these civil rights protections could not be utilized. Instead, counsel manufactured a false narrative that there was "no legal basis" for the motion (*Compl. ¶ 103*) simply to mask an underlying personal discomfort with challenging the employer's legal team. There is an irreconcilable legal difference between a routine strategic disagreement and an attorney actively misrepresenting the state of controlling civil rights law to a vulnerable member. This pattern of deception constitutes a continuing continuum of bad faith designed to retroactively cover up the union's abandonment of a member in an active medical crisis.

## IV. PLAINTIFF HAS PLAUSIBLY ALLEGED DISCRIMINATORY INTENT UNDER CONTROLLING CIVIL RIGHTS STANDARDS[3]

ALAA's reliance on *Amalgamated Ass'n v. Lockridge* is fundamentally misplaced; a plaintiff is not required to produce "substantial evidence" of discrimination to survive a Rule 12(b)(6) assessment. Under the controlling standard set by *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015), a plaintiff need only provide facts supporting a "minimal inference" of discriminatory intent, which Plaintiff's allegations easily satisfy.

First, the union's absolute refusal to perform an independent investigation, paired with its choice to remain completely silent during a known medical crisis, provides the exact circumstantial support required by *Littlejohn* to infer discriminatory animus [2]. Second, under the NYSHRL and the unique statutory mandates of the Local Civil Rights Restoration Act of 2005 (NYCHRL), labor organizations owe independent, affirmative duties to actively advocate for and facilitate the accommodation process for disabled members. By failing to take any protective measures or intervene despite explicit written notice (*Compl. Exhibit I*), the union selectively withheld its contractually mandated advocacy tool because of Plaintiff's protected status (*Conley v. Gibson*, 355 U.S. 41 (1957)). Under the NYCHRL, a labor organization cannot treat a disabled member's psychiatric restrictions as a standard contractual inconvenience; doing so meets the statutory threshold for treating an individual "less well" because of a disability. Third, the ALAA completely discounted Plaintiff's disability disclosures while uncritically rubber-stamping the adverse, discriminatory narrative written directly on the employer's suspension notice (*Compl. ¶ 110*). Rather than acting as an independent representative, the central union swallowed management's characterization without conducting a single factual inquiry, using it as a convenient baseline to weaponize a false interpretation of the CBA's probation language to deny representation altogether (*Compl. Exhs. E, G*).

---

[3] ALAA's citation to *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 224 (S.D.N.Y. 1998) is inapplicable. *Nweke* was decided under a strict summary judgment evidentiary standard, not a Rule 12(b)(6) dismissal filter. Furthermore, *Nweke* predates the Second Circuit's controlling decision in *Figueroa v. Foster*, 864 F.3d 222, 232–33 (2d Cir. 2017), which explicitly untangled independent civil rights claims from traditional DFR filters, establishing that a union's statutory liability under the NYSHRL and NYCHRL stands completely independent of its contractual collective bargaining duties

3

## V. THE DEFENDANTS' CROSS-FORUM STALLED POSTURE CONTRADICTS PRINCIPLES OF JUDICIAL ECONOMY

In the arbitral forum, the Employer successfully obtained an indefinite stay on the merits by claiming it was necessary to avoid "inconsistent outcomes" pending this litigation. This paralysis the Union actively facilitated by abandoning its affirmative duties and claiming "no legal basis" existed to lift it. Because the arbitrator granted the stay without a tracking date, the power to restore the administrative track rests entirely with the parties. Yet, the Defendants have intentionally constructed a self-defeating loop: they are collectively forcing this Court to expend hours parsing complex disability pleadings under Rule 12(b)(6), while ensuring that the specialized contract arbitral forum remains completely frozen.

This shell-game manipulation completely inverts Second Circuit law. Under *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), the avoidance of inconsistent outcomes is achieved by allowing the expedited arbitral track to proceed first to narrow the factual scope of litigation, not by grinding all forums to an absolute halt. Because Defendants are actively weaponizing the 'inconsistent outcomes' doctrine to trap a vulnerable, disabled veteran in an indefinite procedural loop while her documented psychiatric condition deteriorates, their administrative maneuvers constitute a bad-faith litigation tactic designed to stall relief and inflict ongoing medical harm.

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' request to file a formal Motion to Dismiss and allow this civil rights action to proceed. In the alternative, should this Court determine that a formal briefing schedule is unnecessary under Individual Rule 4(A)(ii), Plaintiff respectfully requests that this Court convert the present letter-submissions into the motion itself and deny it on the merits, or schedule an expedited status conference to address the ongoing cross-forum manipulation of the arbitral track.

Respectfully submitted,

Patrice Noel
*Plaintiff Pro Se*

4